```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
PARK-OHIO HOLDINGS CORP., et al.,                   :   CASE NO. 1:15-CV-00943
                                                    :
                Plaintiffs,                         :
                                                    :
v.                                                  :   OPINION & ORDER
                                                    :   [Resolving Doc. 25]
LIBERTY MUTUAL FIRE INSURANCE                       :
CO., et al.,                                        :
                                                    :
                Defendants.                         :
                                                    :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the Court decides whether a general commercial liability insurance policy provides coverage where the insured party sold defective washers and later settled its customer claim after the customer incurred significant expenses repairing equipment that had included the defective washers.

Plaintiffs Park-Ohio Holdings Corp. ("Park-Ohio") and Supply Technologies, LLC ("Supply") sue for coverage under Defendant Liberty Mutual Fire Insurance Company's ("Liberty") and Defendant Allianz Global Risks US Insurance Company's ("Allianz") insurance policies. Defendants move for summary judgment.[1] For the following reasons, this Court **GRANTS** Defendants' motion for summary judgment.

**I. Background**

Plaintiff Supply is a subsidiary of Plaintiff Park-Ohio. Sometime before 2012, Supply entered into a contract with Schneider Electric ("Schneider") to supply Schneider with cap screws

---

[1] Doc. 25. Plaintiffs oppose. Doc 30. Defendants replied, Doc. 31. Plaintiffs moved for leave to file a sur-reply. Doc. 33. This Court denied Plaintiffs' motion. Doc. 34.

-1-

Case No. 1:15-CV-00943
Gwin, J.

for use in Schneider's PZ4 NW Cradle component ("cradles").

In supplying cap screws to Schneider, Supply incorporated washers that it bought from a third party. Unknown to Supply, the washers had hydrogen embrittlement, a defect that can lead to cracking in the washers, which can cause electrical arcing. Supply sold the cap screws with the defective washers to Schneider.

Schneider then assembled the cap screws into the cradles and installed the cradles at various customer locations. After installation, some of the washers cracked. Outside testing showed the washers were defective. Schneider replaced the washers in about 7,000 cradles either at customer locations or at Schneider's warehouse.

In June 2012, Schneider made claims against Plaintiffs for over $14 million in costs that Schneider experienced in replacing the cap screws in about 7000 cradles.[2] In May 2013, Plaintiffs notified Defendant Liberty of Schneider's claim.[3] Liberty denied Plaintiffs' coverage claim after performing a coverage analysis.[4] In December 2014, Plaintiffs settled with Schneider (the "Schneider settlement"). That agreement released Plaintiffs from all claims for a payment of $2,180,000.[5]

Plaintiffs had a Commercial General Liability ("CGL") policy[6] with Defendant Liberty covering the period when Schneider's claims arose. Plaintiffs also purchased a Commercial Umbrella Liability Policy ("Umbrella")[7] with Defendant Allianz for the same period.

---

[2] Doc. 25-7 at 39.
[3] Doc. 25-5.
[4] Doc. 25-9.
[5] Doc. 25-18.
[6] Doc. 25-2.
[7] Doc. 25-3.

Case No. 1:15-CV-00943
Gwin, J.

In September 2014, Plaintiffs Park-Ohio and Supply notified Defendants that one of the washers Supply had sold may have caused a fire at one of Schneider's customer's locations.[8] Plaintiffs provided a fire report,[9] but did not provide the other information that Defendants requested.

Plaintiffs Park-Ohio and Supply bring this action for indemnity of the settlement amount.[10] With their motion for summary judgment, Defendants Liberty and Allianz argue that the claim does not trigger coverage under the CGL or the Umbrella policy,[11] and that if it did, one of several exceptions to coverage would preclude coverage of the settlement.

**The CGL**

Defendant Liberty's CGL does not trigger coverage unless "the insured becomes legally obligated to pay . . . damages because of . . . 'property damage' . . . [and] only if: (1) The . . . 'property damage' is caused by an 'occurrence'[12] . . . ."[13]

Once property damage caused by an "occurrence" triggers coverage, Defendants are not required to cover claims if one or more exclusions to coverage apply. The CGL has the following policy exclusions, among others: 1) the Your Product Exclusion; 2) the Recall Exclusion; 3) the Contractual Liability Exclusion; and 4) the Impaired Property Exclusion.[14] If Plaintiffs' claim falls under one or more valid policy exclusions, then Defendants do not need to cover the claim.

---

[8] Doc. 25-14 at 2.
[9] Doc. 28-3.
[10] Doc. 1-1.
[11] The CGL and Umbrella contain the same coverage and exception language, so the analysis of coverage under each will be the same. *See* Doc. 25 at 11.
[12] Under the CGL "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Doc. 25-2 at 31.
[13] Doc. 25-2 at 18.
[14] Doc. 25 at 9–11 (collecting citations to the CGL exclusions).

Case No. 1:15-CV-00943
Gwin, J.

As explained more fully below, this Court finds that the contractual liability exclusion justifies Defendants' denial of coverage of the Schneider settlement. As a result, the Court does not address the issue of whether the claim triggered coverage because of an "occurrence" under the CGL.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[15] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[16] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[17] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[18] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[19]

## III. Discussion

Regarding interpretation of insurance policy agreements:

> [courts] give effect to the contracting parties' intent by examin[ing] the insurance contract as a whole and look[ing] to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents. Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. This is particularly true when considering provisions that

---

[15]/*Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[16]/*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[17]/*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[18]/*Id.* at 586.
[19]/*Killion*, 761 F.3d at 580. (internal citation omitted).

-4-

Case No. 1:15-CV-00943
Gwin, J.

purport to limit or qualify coverage under the policy."[20]

Coverage analysis largely turns on the damages sought.[21] If the damages are for the insured's own work, there is generally no coverage. If the damages are consequential and derive from the work the insured performed, coverage generally will lie. The underwriting intent is to exclude coverage for the contractor's business risks, but provide coverage for unanticipated consequential damages.[22]

Business risks are "risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage."[23] "Repair or replacement of faulty workmanship is a business expense and not an insurable liability. Therefore, a commercial general liability policy 'does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.'"[24] These principles guide the Court's analysis of the CGL's policy exclusions.

The Defendant Insurance Companies say they correctly denied indemnity because four insurance contract exclusions stopped coverage for the Park-Ohio and Supply claims. The insurance companies say coverage is excluded by: 1) the Your Product Exclusion; 2) the Recall Exclusion; 3) the Contractual Liability Exclusion; and 4) the Impaired Property Exclusion.

**Coverage under the CGL**

Defendants Liberty and Allianz make related arguments that Plaintiffs have no coverage

---

[20] *ACE European Grp., Ltd. v. Abercrombie & Fitch Co.*, 2015 WL 4758156, at *2 (6th Cir. Aug. 13, 2015) (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003); *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989); *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011)) (internal citations and quotation marks omitted).

[21] The Schneider settlement likely includes damages stemming from Schneider's repair of the cradles and from one incident involving a fire. *See* Doc. 25-18 at 3. Because these types of damages are distinct the Court analyzes them separately.

[22] *Indiana Ins. Co. v. Alloyd Insulation Co.*, 2002 WL 1770491, at *3 (Ohio App. Unrep. 2002).

[23] *Heile v. Herrmann*, 736 N.E.2d 566, 568 (Ohio App. 1999) (quoting *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo.1998)).

[24] *Indiana Ins. Co.*, 2002 WL 1770491, at *3 (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 796 (N.J. Sup. Ct. 1979)).

Case No. 1:15-CV-00943
Gwin, J.

because Plaintiffs' claims involved no "occurrence" and because the insurance contracts exclude breach of contract damages. With both of these arguments, Defendants Liberty and Allianz say the Schneider claims were breach of contract or warranty claims that are not occurrences under the insurance contract and say that contract claims are also excluded under the insurance contract.

In *Westfield Ins. Co. v. Custom Agri Systems, Inc.*, the Ohio Supreme Court generally held that "the CGL policy does not provide coverage to Custom for its alleged defective construction of and workmanship . . . ."[25] As one commentator has described, "poor performance is a cost of doing business; it is not a part of the insurance objective of shifting risk. A contractor's poor performance is outside the scope of CGL coverage."[26]

Couch on Insurance says the same:

> A commercial general liability policy is designed and intended to provide coverage to the insured for tort liability for physical injury to the person or property of others. A commercial general liability policy is not intended to provide coverage for the insured's contractual liability which merely causes economic losses. Similarly, a claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident. Instead, what does constitute an occurrence is an accident caused by or resulting from faulty workmanship, including damage to any property other than the work product and damage to the work product other than the defective workmanship.[27]

As described, Supply's customer Schneider made claims because the Supply washers were defective. The defective washers required Schneider to replace the defective washers in cradles in Schneider's inventory and cradles with Schneider customers. Because the Schneider claims sound

---

[25] *Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 979 N.E.2d 269, 274. (Ohio 2012).

[26] Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 786–87 (1995).

[27] 9 Couch on Insurance § 129:4; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Const. Co.*, 119 A.D.3d 103, 107, 986 N.Y.S.2d 74, 77 (2014) ("The general rule is that a commercial general liability insurance policy does not afford coverage for breach of contract, breach of fiduciary duty, or breach of warranty, but rather for bodily injury and property damage.").

Case No. 1:15-CV-00943
Gwin, J.

in warranty and because the resulting damages sound in warranty, they differ from the consequential damages that GCL policies cover. Schneider's claims were not an "occurrence under the policy." Therefore, the Court **GRANTS** Defendants' motion for summary judgment on this issue.

**The Contractual Liability Exclusion**

Relatedly, Defendant Liberty and Allianz say that Schneider made breach of contract and warranty claims that were separately excluded from coverage.

The CGL does not cover "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[28] As a qualification to the exclusion, the CGL states that the "exclusion does not apply to liability for damages . . . [t]hat the insured would have in the absence of the contract or agreement."[29] Ohio courts treat "[t]he contractual liability exclusion [as] a 'business risk' exclusion."[30]

The question at hand is whether the losses for which Plaintiffs and Schneider settled fall under this policy exclusion.

In *Younglove Construction, LLC v. PSD Development, LLC*, the district court persuasively analyzed economic losses under a similar contractual liability exclusion.[31] In that case the insured claimed coverage for losses associated with a defective grain bin in a larger animal feed manufacturing plant. That court held:

> [c]laims for economic losses deriving from defective construction sound in contract. These are not the consequential or collateral damages Ohio courts consider covered by CGL policies. Ohio courts have found coverage under a CGL policy only when

---

[28] Doc. 25-2 at 81.
[29] *Id.*
[30] *Younglove Const., LLC v. PSD Dev., LLC*, 767 F. Supp. 2d 820, 826 (N.D. Ohio 2011).
[31] *Id.*

-7-

Case No. 1:15-CV-00943
Gwin, J.

defective construction causes damage to other property.[32]

The contractual liability exclusion in Defendant Liberty's CGL precludes coverage for the losses stemming from the loss of use of the cradles. The losses for which Plaintiffs and Schneider settled are business risks inherent in supplying parts. At its essence, Schneider argued that Supply broke its contract by supplying defective parts and that Schneider incurred damages in replacing the defective washer parts.

Like "the claim for damages resulting from the loss of storage space" in *Younglove*,[33] Plaintiffs' coverage claim for the losses associated with repairing the cradles in this case "sounds in contract, arising from an assumed risk of doing business, and the contractual liability exclusion therefore does apply."[34]

Plaintiffs Park-Ohio and Supply argue that the "absence of the contract" qualification makes the contractual liability exclusion inapplicable to their coverage claim. However, Plaintiffs were responsible to Schneider for the losses because Plaintiffs entered into a supply contract with Schneider.[35] Plaintiffs failed to provide compliant washers as required by the contract, giving Schneider a claim for breach of contract. Without the supply contract, Schneider would have no claim against Plaintiffs. Therefore, all of the liabilities Plaintiffs had to Schneider for the cradle repairs fall under the contractual liability exclusion.

**The Your Product Exclusion**

Independent of these discussions, Defendants Liberty and Allianz would also likely have

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] Doc. 25-4.

Case No. 1:15-CV-00943
Gwin, J.

been justified in denying coverage on Plaintiffs' claims under the Your Product policy exclusion. That exclusion denies coverage for "'Property damage' to 'your product'[36] arising out of it or any part of it."[37] As explained above, the property damages in this case arose solely from the defect in the washers that Schneider installed into the cradles. The washers did not cause damage to any other components or property, and no other defect caused property damage. The defective washers were Plaintiff Supply's product. Therefore, the Your Product exclusion removes Plaintiffs' claim from coverage.

### The Impaired Property Exclusion

The Impaired Property Exclusion does not prevent coverage under the CGL. That exclusion denies coverage for

> "[p]roperty damage" to "impaired property" or property that has not yet been physically injured, arising out of [a] defect, deficiency, inadequacy or dangerous condition in "your product" . . . . This exclusion does not apply to the loss of use of other property arising out of sudden and accidental *physical injury* to "your product" . . . after it has been put to its intended use.[38]

The cradles were "impaired property" that had not been physically injured. Only the washers suffered physical injury. The "property damage" to the cradles arose out of the defective washers that had to be replaced. This case fits under the language of the first sentence of the exclusion.

However, the exclusion does not apply under the language of the second sentence. That qualification in the exclusion deals with sudden and accidental *physical injury*, not with sudden and

---

[36] Under the CGL, "'Your Product'" means "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou," and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of 'your product' . . . ." Doc. 25-2 at 32.
[37] *Id.* at 22.
[38] *Id.* (emphasis added).

Case No. 1:15-CV-00943
Gwin, J.

accidental *defects*, as Defendants argue.[39] Though the washers' hydrogen embrittlement was not sudden, the physical cracking was both sudden and accidental. The cracking caused loss of use of the cradles after the washers had been put to their intended use. Therefore, the Impaired Property exclusion does not apply.

**The Recall Exclusion**

Defendants Liberty and Allianz would likely have been justified in denying coverage on Plaintiffs' claims under the recall policy exclusion. That exclusion prevents coverage for

> [d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . "[y]our product" . . . [or for] "[i]mpaired property"; if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.[40]

Under Ohio law recall exclusions only apply if the defective product was actually recalled in order to prevent future failures.[41]

Schneider's claims were for expenses from the replacement of the defective washers and the loss of use of the cradles. The washers were actually removed from the cradles and replaced with conforming washers.[42] Schneider replaced the defective washers in order to prevent the increased risk of electrical arcing associated with the washers. These damages fall squarely within the language of the recall exclusion. Therefore, the Recall exclusion removes these damages from

---

[39] Doc. 25 at 16–17.
[40] Doc. 25-2 at 22.
[41] *Erie Ins. Exch. v. Colony Dev. Corp.*, 736 N.E.2d 941, 950 (Ohio App. 1999).
[42] Doc. 25-7 at 27. Plaintiffs argue that the recall exclusion does not apply because the cradles themselves were not recalled. Doc. 30 at 17. This argument loses. It is sufficient for the recall exclusion that the washers were removed from the cradles and taken off the market. Similarly, Plaintiffs' argument that the removal was not preventative because the washers were already cracked loses. The removal was meant to prevent future risk of electrical arcing, not the cracking itself.

Case No. 1:15-CV-00943
Gwin, J.

coverage.

### Equitable Estoppel

Plaintiffs argue that the doctrine of equitable estoppel prevents Defendants from invoking any of the CGL's policy exclusions. The argument loses.

To establish equitable estoppel, Plaintiffs must show "(1) a factual misrepresentation, (2) which is misleading, (3) and induces reasonable and good faith reliance, (4) to the detriment of the relying party."[43]

Plaintiffs do not show that Defendants made a factual misrepresentation regarding coverage of the Schneider settlement. Liberty listed the exclusions as grounds for denying coverage in its initial coverage denial letter of October 11, 2013. None of the later correspondences from Defendants suggested that coverage existed or that Defendants would not rely on these exclusions. Defendants did not need to reassert each possible ground for denial in every correspondence with Plaintiffs in order to reserve those grounds.

Nor can Plaintiffs show that they detrimentally relied on any misrepresentation by Defendant. Plaintiffs' positions did not change due to Defendants' representations over the course of the litigation.[44] Therefore, Plaintiffs' equitable estoppel argument fails.

### Fire Damage Coverage

Plaintiffs Park-Ohio and Supply claim coverage for damages resulting from a fire that melted a switchboard where one of the cradles was installed. As the district court suggested in *Younglove*, physical damage of this sort is a consequential harm sounding in tort that would likely be covered

---

[43] *Lubrizol Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 200 F. App'x 555, 564 (6th Cir. 2006) (citing *Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio App. 2000)).

[44] *See id.* at 565 (citing *McDermott v. Cont'l Ins. Co.*, 591 N.E.2d 251, 253 (Ohio App. 1990); *Hartory v. State Auto Mut. Ins. Co.*, 552 N.E.2d 223, 225–26 (Ohio App. 1988)).

Case No. 1:15-CV-00943
Gwin, J.

under the CGL.[45] The fire damages are distinct from the economic losses stemming from repairing the cradles in this way.

However, the only evidence that Plaintiffs cite to support their claim is a third-party fire report prepared for Schneider.[46] The report concludes that the "[m]elting of the front of the breakers . . . indicate[s] that the grounded metal was carrying electrical current. This *can* occur if the mounting hardware fails allowing for heat degradation and arcing . . . ."[47] The report does not conclude that bad mounting hardware caused the arcing.

The report also says that "[t]he area of origin of the arcing is a breaker cradle connection; however, the damage is too great to obtain evidence of the hardware that was installed."[48] The report does not say that the defective washers—as opposed to any of the numerous other components in the cradle—caused the arcing.

Given the lack of evidence indicating that Plaintiffs' defective washers caused the switchboard fire, Plaintiffs are not entitled to coverage for the losses due to the fire.

Even if Plaintiffs Park-Ohio and Supply had been able to create a genuine dispute of material fact regarding the cause of the switchboard fire, Plaintiffs likely still would not be entitled to recover due to their lack of cooperation in providing information about the fire. "[L]ack of cooperation may warrant cancellation of a policy or relieve an insurer of an obligation on a claim" if the insured's lack of cooperation "prejudice[s] material rights of the insurer."[49]

---

[45]*See Younglove*, 767 F. Supp. 2d at 826 (collecting citations to cases holding that policy exclusions did not apply to consequential damage to others' property).
[46]Doc. 28-13.
[47]*Id.* at 3 (emphasis added).
[48]*Id.*
[49]*Gabor v. State Farm Mut. Auto. Ins. Co.*, 583 N.E.2d 1041, 1043 (1990).

Case No. 1:15-CV-00943
Gwin, J.

Defendants treated the notice of fire damage as a new claim that they had not yet denied.[50] Plaintiffs were therefore under a duty to assist in the investigation of the fire claim unless and until Defendants denied the claim.[51]

Defendants requested information about the fire several times over the course of months.[52] However, Plaintiffs did not provide any of the information Defendants requested, despite having other correspondence with Defendants during that time.[53] Plaintiffs materially breached their duty to cooperate with Defendants by failing to provide the information. This breach hurt Defendants' ability to investigate the fire claim. As a result Plaintiffs cannot now claim coverage for the fire damages. The Court **GRANTS** Defendants' motion for summary judgment as to the fire damages.

### Plaintiffs' Bad Faith Denial Claim

Plaintiffs say that Defendants acted in bad faith in handling and denying Plaintiffs' claims for coverage. To win on their claim, Plaintiffs would have to show that Defendants' "refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."[54]

However, for the reasons stated above, the Court finds that Defendants were justified in denying coverage based on the contractual liability exclusion in the CGL. Defendants analyzed Plaintiffs' claim for coverage and correctly concluded that the language of the CGL and several policy exclusions removed the claim from coverage. The Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' bad faith claim.

## IV. Conclusion

---

[50] Doc. 25-15.
[51] Under the CGL, Plaintiffs "must: . . . [c]ooperate with [Defendants] in the investigation or settlement of the claim . . . ." Doc. 25-2 at 28.
[52] Doc. 25-15; Doc. 25-17.
[53] Doc. 25-16.
[54] *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994).

Case No. 1:15-CV-00943
Gwin, J.

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' coverage claim.

IT IS SO ORDERED.

Dated: October 30, 2015.          s/      *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE